## DETERMINED IN THE

# Supreme Court of Judicature,

### OF THE

## STATE OF NEW JERSEY,

### AT SEPTEMBER TERM, 1826.

---

## JOSHUA SOUDERS *v.* VANSICKLE and GARRISON.

1. In an action brought by the purchaser of the equity of redemption of mortgaged premises, to recover the rent from a tenant, it is not competent for the tenant to prove the existence of a mortgage *prior* to the commencement of his tenancy, the service of notice thereof on him, demand of such rent by the mortgagee, and actual payment thereof to him.

2. A tenant under a lease made *prior to the mortgage*, may be sued or distrained upon by the mortgagee for rent, after notice not to pay it to the landlord.

3. But where the lease is *subsequent* to the date of the mortgage, a mortgagee can neither distrain nor bring an action for rent against the tenant.

---

*Saxton* and *Vroom* for the plaintiff.

*Wall* for defendant.

The Chief Justice having been concerned as counsel in the cause before he came upon the bench, gave no opinion.

The opinion of the court was delivered by

FORD, J. This writ of error brings up a judgment of the inferior Court of Common Pleas for the county of Hunterdon, in an action on the case, by Vansickle and Garrison against Joshua Souders for the enjoyment of certain premises by their permission from May, 1821, to April, 1822. The case was that one John Holmes, the prior owner, had mortgaged the premises in 1817 to Samuel and Joseph Drake for the payment of a sum of money, and after remaining several years in possession, had conveyed his remaining interest in the premises to Maxwell and Conover. These men entered and put Joshua Souders in possession as their tenant. In this state of things the sheriff levied on Maxwell's right in the premises by virtue of an execution against him, and struck it off at public sale, the 11th of May, 1821, to Vansickle and Garrison ; on the 21st of July following he made out to them a deed of conveyance. As soon as the right was struck off to Vansickle and Garrison, and before they got a deed, Joshua Souders, the tenant, *attorned to them as his landlords and agreed to pay them a stipulated rent.* Shortly afterward Samuel and Imlay Drake conceived that as mortgagees *they* were the persons entitled to have the rent ; whereupon they served notice of their mortgage on Souders, the tenant, forbid him to pay the rent to Vansickle and Garrison, his immediate landlords, and required him to pay it to them as holders of the mortgage. This Souders not only agreed to do, but afterward paid it accordingly to the mortgagees on receiving from them an indemnity. The mortgagees, on filing a bill against Holmes, the mortgagor, and making Vansickle and Garrison parties thereto, obtained a decree on the 10th of October, 1821, foreclosing the equity of redemption against all three of them in the Court of Chancery.

On the trial of the cause Vansickle and Garrison proved the occupation of the premises by Souders, under their per-

mission, and his agreement to pay them rent; and then rested their cause. Souders thereupon offered to prove the mortgage, the notice of it served on him by the mortgagees, their demand upon him for the rent, and his actual payment of it to them. He insisted that he was bound by law, under such circumstances, to pay to the mortgagees, and therefore the payment was a good defence against his landlords. The Court being of a different opinion overruled his defence. Whether the mortgagees after such notice or demand could have sued Souders or distrained his goods for the rent is the main point in dispute.

It was fully settled on satisfactory principles, in the case of *Moss* v. *Gallimore, Doug.* 269, that a tenant under a lease *made prior to the mortgage,* may be sued or distrained upon by the *mortgagee* for rent, after notice not to pay it to the landlord. The lease in that case was a few months *older* than the mortgage; consequently the rent was an incident of the estate; in other words it was *a part of the property* at the time of the grant, and *passed by it to the mortgagee.* The mortgagor was estopped by *his own deed* from claiming rent that he had conveyed away; the mortgagee was the *assignee* of the rent, and might take it to himself whenever he saw proper. No injury is done in such case to the tenant, who is to pay to the *lessor* or his *assigns,* and can pay but once. Moreover it is the duty of a tenant at common law to attorn to the grant of his landlord whenever he makes one. He was compellable to do so till the statute rendered the form of it unnecessary. Since the statute, the court are to consider him *as having attorned at the time* of the execution of the grant. To 'attorn is to acknowledge the grantee, (that is the mortgagee), as landlord under whom he holds the estate—On this, a liability to him for rent is a matter of course.

But in this case Souders was no tenant *at the date* of the mortgage nor till many years afterward; he never held under the mortgagor or grantor, nor stood in the relation of

a tenant to him; his rent could not have been conveyed by the mortgage as incident to, or a part of the estate because his rent did not exist at the date of the mortgage. As it has no resemblance whatever, therefore, to the case of *Moss* and *Gallimore*, and stands wide of the principle contained in that decision, it cannot be governed by it.

I admit that some authors treating of mortgagors remaining in possession and making leases *subsequent* to the mortgage, say, that in such case the mortgagee has his option *either* to treat such tenants as wrong-doers and turn them out by ejectment, or to recover rent from them by distress or action, after giving notice of the mortgage and making a demand of the rent. See *Powell on mortgages*, 66, 67, 68; and *Bacon's ab. tit. mortgage, C. note e.* Unfortunately these authors do not cite a case that turned on this point, nor have I been able to find one; yet cases must have been very frequent and familiar if such were the law. A mortgagee would seldom bring an ejectment, which is the common way, if by distraining the tenant he could get into possession of the rent; for he would not only obtain thereby the rent towards his interest, but get into possession also. The only case cited by those authors is that of *Birch* v. *Wright*, 1 *Term. Rep.* 378; but that was the case of one who had been a tenant *from year to year* of the mortgagor from *before the date of the mortgage till many years after it.* BULLER, Justice, said, "I consider him as holding all that time under *a demise made before the conveyance to the plaintiff;* for if tenant *from year to year* holds for four or five years, either he or his landlord may declare on the demise as having been made *for such a number of years,* and so it was expressly laid down by HOLT, C. J. in *Legg* v. *Strudwick, Satk.* 414."

But their position is not more destitute of cases to support it, than it is to my mind of principle. How could Souders attorn to the mortgage at the time it was made, when he was no tenant at that time nor till three or four years after-

ward ? How *can* the court *consider* him as having attorned at that time without an absurdity ? Could *Souders'* rent have been part and parcel of the estate when Holmes conveyed it, at which time there was no such rent in being ? And Holmes *had* no such rent to convey. It is a *maxim* according to *Co. Lit. Lib.* 3, *sec.* 554, that no man shall attorn to a grant but he who is immediately *privy* to the grantor ; therefore Souders could not attorn to a grant of Holmes for he was not his lessee, he held no part of the estate, and there was no relation or *privity* between them.

As a mortgagor remains in possession *only at the will* of the mortgagee, and in the meantime receives the rent and pays it over to keep down the interest of the mortgage, he was once accidentially likened to an *agent* of the mortgagee; from thence an inference was hastily drawn that if the *agent* at any time made a lease the mortgagee as *principal* might have the benefit of it. But a mortgagor in possession is no agent ; for according to a long train of decisions he cannot be made to account *either in law or equity*, for the profits he may have received from the estate ; the idea of an *agency* was therefore instantly exploded. In fine, no principle presents itself to my mind on which a mortgagee who is neither party nor privy to a lease, can claim the benefit of it against the will of the lessor and lessee and in contravention of the covenant therein, that the lessee shall pay the rent to the lessor. The question now under consideration came up in the Supreme Court of the State of New York, directly in the case of *McKircher* v. *Hawley*, 16 *John.* 286, and there the court held unanimously, that where the lease is *subsequent to the date of the mortgage*, a mortgagee can neither distrain nor bring an action for rent against the tenant, there being no privity of contract or estate between him and such tenant, *without which* there can be no distress nor action for rent.

It was insisted that the mortgagees having the legal estate, and also peaceable possession by Souders their tenant, had

a right to keep it; that the *attornment* of *their* tenant to Vansickle and Garrison became entirely *void* under the 12th section of the act, *Rev. Laws* 192, and gave them no possession nor right or title to the rent. The validity of Souders' attornment to the mortgagees depends on the question *whose tenant* he was at the time he attorned. The statute says that the possession of estates is rendered precarious by the practice of tenants in attorning to *strangers*, whereby the landlords of such tenants are turned out of possession and put to great trouble and expense; therefore, every *such* attornment (meaning to strangers) shall be *void*, and the possession of such landlord shall not be deemed or construed to be *changed, altered* or *affected* thereby. Now Maxwell and Conover had put Souders in possession as *their* tenant, and he could not lawfully attorn to any person but *their grantee*. The sheriff's act in conveying Maxwell's right was the same thing as a conveyance by Maxwell himself, the sheriff being a legal agent of his to transfer the title, 1 *South.* 273. To this transfer of *his* landlord it was proper that Souders should attorn as he did, and the court must have considered him as having attorned whether he did or not. Vansickle and Garrison having thus become *his* landlords he could not turn over their possession to *strangers* without contravening the statute; and the court must consider his attempt to do so as having no power to *change, alter* or *affect* the lawful possession of Vansickle and Garrison the landlords. The mortgagees had therefore no legal possession.

But it is argued that attornment *to a mortgagee* after the mortgage becomes forfeited is *made good* by the proviso of the 17th section. I think it is inaccurate to say that the statute *makes* any attornment *good;* its whole office is to make certain attornments, so called, *void.* In vacating certain attornments it provides that it shall not extend to three cases, namely: that made by consent of the landlords; that to a mortgagee after the mortgage becomes forfeited; and that made by direction of a court of justice; it neither makes

these *good* nor makes them *void,* but *leaves* them to be good or not *according to the manner in which they have been made* Now attornment is the consent of a *tenant* to the grant of *his* landlord; he must be a *tenant,* and the grant assented to must be that of *his* landlord; the assent of any *stranger* is no attornment for want of *privity.* *Lord Coke* says it is a maxim that no man *can* attorn to a grant but he that is *privy to the grantor,* 1 *Ins. Lib.* 3, *sec.* 554. Now when John Holmes made the grant of the mortgage *none but his tenant* could attorn to it. Souders stood as to him a *stranger* without the least privity between them. His *agreement* many years afterward to pay rent to the mortgagees was so far from being an *attornment to that grant,* that it is a misnomer to give it that appellation, for want of *privity* in law between him and the grantor.

Finally, it was argued that Vansickle and Garrison had no right in the premises that was not extinguished by the decree of foreclosure, and the tenant should have been permitted to prove that the *title of his landlords had expired.* But I apprehend that this could not have been lawfully permitted. In the case of *Cook* v. *Lonley,* 5 *Ter. Rep.* 4, the court held it to be a *common rule* that a tenant should not be allowed to *impeach* his landlord's title in an action for use and occupation. In *Lewis* v. *Wallace, Bul. N. Pr.* 139, the court said that where a tenant held *by permission* the landlord should recover though he had *no title at all.* This principle is most fully recognized in *Knight* v. *Smith,* 4 *Maul. & Selw.* 349; see also 4 *Cowen* 576, and the cases collected in *Woodfall's Landlord and Tenant* 330, too numerous to be cited. There seem to be some exceptions to this rule, where a tenant has been ejected or turned out of possession by title paramount, and where the lease shews that the title will expire at a certain time or on a certain event, as in consequence of the lessor being only an executor during the *minority* of A; but this case comes under none of those exceptions. It would form the plain precedent of a

tenant occupying *by permission* till the end of his term, and then evading the payment of rent by denying the landlord's title for the very time that the tenant held under him. On the whole the matters offered in evidence would not have amounted to a legal defence, and were properly ·overruled. I am therefore of opinion that the judgment of the court below ought to be affirmed.

Judgment affirmed.